# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

Nº 09-CV-3372 (JFB)

---

IN RE: ANNETTE P. DURAND,

Debtor.

GEORGE A. DURAND,

Appellant,

VERSUS

NEIL H. ACKERMAN,

Appellee.

---

**MEMORANDUM AND ORDER**
September 27, 2010

---

JOSEPH F. BIANCO, District Judge:

The instant case is an appeal from the voluntary bankruptcy proceeding of Debtor Annette P. Durand ("Debtor") and her husband George A. Durand ("G. Durand" or "Appellant"), pursuant to Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court"). This appeal arises out of the action of Trustee Neil H. Ackerman ("Trustee" or "Appellee") to avoid the transfer of property from the Debtor to Appellant as a fraudulent conveyance.

Appellant G. Durand, proceeding *pro se*, appeals from the June 25, 2009 judgment of Honorable Robert E. Grossman, United States Bankruptcy Judge, granting judgment after trial against G. Durand. Specifically, the Bankruptcy Court determined that a transfer made to Appellant by Debtor prior to her bankruptcy filing should be avoided as a fraudulent conveyance.

G. Durand appeals from the judgment on the following grounds: (1) there was insufficient evidence for the Bankruptcy Court to conclude that Appellant was an "insider" for the purposes of analyzing the fraudulent conveyance claims; (2) the Bankruptcy Court incorrectly determined the date on which Appellant filed for divorce; (3) there was adequate consideration for the conveyance of Debtor's property; (4) the Bankruptcy Court "pre-judged" Appellant and set judgment against Appellant prior to the trial, by ordering Appellant to permit a real-

estate expert to access his home on May 19, 2009; and (5) there were several procedural errors with his trial in Bankruptcy Court that denied Appellant a fair trial.

As set forth below, the Court determines that Appellant's arguments are without merit and affirms the judgment of the Bankruptcy Court in its entirety.

## I. BACKGROUND

### A. Factual Background

The Court summarizes the facts relevant to the instant appeal, as found by the Bankruptcy Court at trial on May 14, 2009. On or about August 2, 1977, Debtor and Appellant, husband and wife, purchased real property at 7 Howard Avenue, Freeport, NY 11520 ("7 Howard Avenue") as tenants by the entirety. At the Debtor's Section 341 examination (the "341 Hearing"), the Debtor testified under oath that she owned and lived in 7 Howard Avenue for many years and continued to live at 7 Howard Avenue as of the filing date of the bankruptcy petition and the date of the 341 Hearing. On June 8, 2002, Debtor and Appellant executed a Memorandum of Agreement of separation, which was filed with the Nassau County Clerk's Office on October 13, 2004. Also on October 13, 2004, Debtor executed a deed transferring her interest in the property at 7 Howard Avenue for $10. The property is valued at around $360,000 and was encumbered by a $123,750 mortgage held by First West Mortgage Bankers at the time of transfer. This transfer was made at a time when the Debtor owed money to many creditors that she could not pay, was being sued by at least three creditors, and was insolvent.

On October 4, 2004, Appellant refinanced the property in his name only for $140,000 with Lehman Brothers, and First West Mortgage Bankers issued a letter of mortgage-loan satisfaction. As of May 12, 2005, after the filing of the instant bankruptcy petition, Debtor continued to reside at 7 Howard Avenue. In November 2005, the deed was recorded with the Nassau County Clerk's Office. Debtor did not inform trustee of the recording. In 2007, divorce proceedings between Debtor and Appellant commenced.

The Bankruptcy Court concluded that there was no evidence in the record that the transfer was made pursuant to the parties' separation memorandum of October 13, 2004. Nor did the Bankruptcy Court find evidence that the transfer was filed with the state court in connection with the matrimonial proceeding or that the transfer was incorporated into a divorce decree or judgment "so ordered" by a state court.

### B. The Bankruptcy Proceedings

On April 1, 2005 (the "filing date"), Debtor commenced a bankruptcy proceeding by filing a Chapter 7 petition with the Bankruptcy Court. (Petition.) Appellee was appointed the acting bankruptcy trustee in the Debtor's Chapter 7 case. (*Id.* ¶ 5.) On March 28, 2007, the Trustee commenced an adversary proceeding against both the Debtor and Appellant pursuant to various sections of the Bankruptcy Code and New York Debtor and Creditor Law, seeking, *inter alia*, the avoidance of the transfer of 7 Howard Avenue and authorization to sell both the Debtor's and Appellant's non-Debtor interest. (*See* Compl.) The Trustee alleged that the transfer could be avoided either as a fraudulent conveyance or as an unauthorized post-petition property

transfer.[1]  (*Id.* ¶ 30, 32.)  The following procedural events formed the basis for the Bankruptcy Court's judgment.

On April 16, 2007, Appellant interposed an answer alleging that Debtor and Appellant had been legally separated since June 2002, and that Debtor did receive consideration for the transfer—namely, she was permitted to continue living in the house without paying any obligations related to the house.

On January 6, 2009, Appellant filed a motion to dismiss the Trustee's complaint. The Bankruptcy Court denied Appellant's motion on February 3, 2009, concluding that the Trustee had asserted a sufficient factual basis for his claims in the complaint.  On May 5, 2009, the Trustee filed a motion for summary judgment against Appellant on each of his claims.  The Court reserved decision on the motion for summary judgment and proceeded with the trial, which was held on May 14, 2009.

---

[1] Section 549(a) of the Bankruptcy Code provides that (with exceptions not relevant here), "the trustee may avoid a transfer of property of the estate (1) that occurs after the commencement of the case and (2) (A) that is authorized only under section 303 (f) or 542(c) of [the Bankruptcy Code]; or (B) that is not authorized under this title or by the court."  Trustee's review of the land records of Nassau County showed that the deed was not recorded with the Nassau County Clerk's Office until November 14, 2005, more than seven months after the filing date and more than one year after the deed date.  However, the Bankruptcy Court determined that it was unnecessary to determine whether the transfer of 7 Howard Avenue constituted an unauthorized post-petition transfer, since it was avoidable as a fraudulent conveyance.

## C. Bankruptcy Court's Ruling

After trial on May 14, 2009, at which the Bankruptcy Court made the above findings of fact, the Bankruptcy Court issued an oral ruling on the record on June 1, 2009, followed by a written judgment dated June 23, 2009. The Bankruptcy Court held that: (1) the transfer by Debtor of the Debtor's tenancy by the entireties ownership interest in 7 Howard Avenue to G. Durand, by an deed allegedly dated October 13, 2004, which was recorded with the Nassau County Clerk's Office on November 14, 2005, should be avoided as a constructive intent fraudulent conveyance and as a conveyance made with actual intent to hinder, defraud, or delay creditors; (2) title to the property at 7 Howard Avenue should be restored to joint ownership of G. Durand and Debtor, with Debtor's interest in the property to be administered by the Trustee as part of the Bankruptcy Estate; (3) the Bankruptcy Estate owns at least 50% of 7 Howard Avenue; (4) the Trustee shall be authorized to immediately market and sell the fee simple interest in 7 Howard Avenue, with the net proceeds of such sale to be divided equally between the Bankruptcy Estate and G. Durand; and (5) the Trustee shall be awarded costs of $250 for filing this adversary proceeding against G. Durand, to be awarded from G. Durand's share of the proceeds. *Ackerman v. Durand*, Adv. Proc. No. 07-8115-736, Transcript of Oral Ruling dated June 1, 2009 ("Bankruptcy Opinion").

## D. Procedural History of the Instant Action

On June 24, 2009, Appellant filed a Notice of Appeal of the Bankruptcy Court's judgment.  On August 10, 2009, the Notice of Docketing of Bankruptcy Appeal was filed. Appellant filed his brief on August 20, 2009. Appellee filed its brief on October 9, 2009.

Appellant did not file a reply. The Court has fully considered all submissions of the parties.

## II. STANDARD OF REVIEW

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may remand with instructions for further proceedings. *See* Fed. R. Bankr. P. 8013.

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007); *see also Lubow Mach. Co. v. Bayshore Wire Prods. (In re Bayshore Wire Prods.)*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law *de novo*, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion." (internal citations omitted)); *accord Shugrue v. Air Line Pilots Assoc., Int'l (In re Ionosphere Clubs)*, 922 F.2d 984, 988-89 (2d Cir. 1990) (citations omitted).

## III. DISCUSSION

G. Durand appeals from the judgment of the Bankruptcy Court to this Court, claiming that: (1) there was insufficient evidence for the Bankruptcy Court to conclude that Appellant was an "insider" of the Debtor when she transferred 7 Howard Avenue to him; (2) the Bankruptcy Court incorrectly determined the date on which Appellant and Debtor filed for divorce; (3) there was adequate consideration or reasonably equivalent value for the conveyance of Debtor's property, in the form of satisfaction

of a mortgage; (4) the Bankruptcy Court "prejudged" Appellant and set judgment against Appellant prior to the trial, by ordering Appellant to permit a real-estate expert to perform an appraisal of his home on May 19, 2009; and (5) there were several procedural defects with the Bankruptcy Court proceedings. The Court has reviewed the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*.[2] After full consideration of Appellant's claims and a thorough examination of the record below, the Court concludes that Appellant's claims are without merit and affirms the judgment of the Bankruptcy Court in its entirety.

### A. Fraudulent Conveyances

The New York Debtor and Creditor Law, and its analogous provisions in the Bankruptcy Code, protect against two kinds of fraudulent transfers: (1) transfers made with an actual intent to hinder, delay, or defraud; and (2) transfers that the law considers to be fraudulent, *i.e.*, constructively fraudulent transfers. *Bruno Machinery Corp. v. Troy Die Cutting Co. (In re Bruno Machinery Corp.)*, Bankr. No. 05-20412, Adv. No. 07-90028, 2010 WL 2403124, at *24 (Bankr. N.D.N.Y. June 9, 2010).[3] The applicable New York state law allowing for the avoidance of actual and constructive fraudulent conveyances is set forth in New York Debtor and Creditor Law sections 273, 274, 275, and 276.

---

[2] Even if this Court reviewed all of the Bankruptcy Court's determinations under a *de novo* standard of review, it would reach the same determination for the reasons discussed *infra*.

[3] Section 544 of the Bankruptcy Code allows for the avoidance of certain transfers that would be avoidable under state law. See 11 U.S.C. § 544(b)(1).

The Bankruptcy Code allows the Trustee to avoid transfers made up to two years prior to the date of the debtor's filing of the bankruptcy petition, *see* 11 U.S.C. § 548; New York Debtor and Creditor Law allows for the avoidance of transfer made up to six years prior, *see* N.Y.C.P.L.R. § 213(8). The Bankruptcy Court determined that Debtor's transfer of 7 Howard Avenue to Appellant was an actual and a constructive fraudulent conveyance, under both federal and state law. Accordingly, this Court analyzes Appellant's objections to the Bankruptcy Court's ruling under both federal and New York state avoidance law.

1. "Insider" Status and Date of Divorce

Appellant contends that he was not an "insider" of the Debtor at the time of the fraudulent transfer. The Bankruptcy Court concluded that, based upon the fact that Debtor and Appellant were not divorced and still lived together, Appellant was an insider at the time of the transfer. This Court agrees.

"An 'insider' generally is an entity whose close relationship with the debtor subjects any transactions made between the debtor and such entity to heavy scrutiny. . . . Whether or not an individual or entity will qualify as an insider is a question of fact." *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 564-65 (Bankr. S.D.N.Y. 2002) (quoting Collier on Bankruptcy ¶ 101.31 (15th ed. rev. 2001)); *see also Hirsch v. Va. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256, 262-63 (Bankr. S.D.N.Y. 2002) (same).

On appeal, Appellant argues that he introduced a separation agreement dated June 8, 2002 as concrete evidence that he was not an insider of the Debtor at the time she transferred her interest in 7 Howard Avenue

to him. Appellant contends that this legal separation ultimately led to a final divorce, and, thus, he was not an insider. Appellant contends that Appellee presented no evidence, no experts, and no witnesses on the issue of whether Appellant was indeed an insider.

Where the transaction at issue involves family members, and the transaction was made without any tangible consideration, "a heavier burden is placed upon the grantee to demonstrate fair consideration for the transfer." *United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994). As an initial matter, Appellant and Debtor were not divorced, but merely separated, at the time of transfer. Pursuant to the Bankruptcy Code, the term "insider" includes "a relative of the debtor." 11 U.S.C. § 101(31)(A). The term "relative" is defined as an "individual related by affinity or consanguinity within the third degree as determined by the common law, or an individual in a step or adoptive relationship within such third degree." 11 U.S.C. § 101(45). Accordingly, because Debtor and Appellant were still legally married, there was a basis for the Bankruptcy Court to conclude that Appellant was an insider. *See, e.g.*, *Thaler v. Gamaldi (In re Gamaldi)*, Bankr. No. 807-71366-reg, Adv. Nos. 807-8322-reg, 808-8104-reg, 2009 WL 961417, at *12 (Bankr. E.D.N.Y. Apr. 7, 2009) (concluding that Debtor's estranged stepmother-in-law was an insider of Debtor at the time of transfer). Moreover, the facts surrounding Debtor and Appellant's relationship also militate in favor of a finding that Appellant was an insider of Debtor. Here, Appellant and Debtor were not divorced at the time of the transaction and, indeed, were living in the same house at 7 Howard Avenue. (*See, e.g.*, 341 Hearing Tr. 1-4.) Although they claim to have lived in different parts of the mother-daughter-style home, Debtor still had

complete access to the entire home. (Tr. 39 ("Q: And your answer on line 15, 'Did she have a key to your apartment' was? Can you read it? A: It's 'Yeah.' Q: And then you were asked, 'Did she ever come to your apartment?' and the answer on line 18? A. 'Yeah.'").) Moreover, as discussed further *infra*, there was evidence to suggest that Appellant and Debtor still shared expenses because Appellant presented no evidence regarding his personal income. Thus, the Bankruptcy Court's finding that Appellant was an "insider" of the Debtor—despite the separation agreement that Appellant introduced into evidence—was not erroneous. *See, e.g.*, *Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008, 1014 (5th Cir. 1992) (determining that, based upon the circumstances of their continued relationship, a divorced ex-wife was an "insider" of her ex-husband); *see also Gray v. Fill (In re Fill)*, 82 B.R. 200, 220 (Bankr. S.D.N.Y. 1987) (concluding that a transfer between debtor and former mother-in-law would be treated as an "intra-family transfer," for purpose of New York's fraudulent conveyance law, where debtor and former spouse were living together at time of transfer and parties had shared close family relationship for several years).

Also on appeal, Appellant contends that the Bankruptcy Court incorrectly determined the date on which Appellant filed for divorce. Specifically, Appellant claims that the Bankruptcy Court erred regarding the date Appellant filed for divorce; Appellant submits a document establishing "May 15, 2007 as the date Appellant filed for the action of divorce." (Appellant's Br. at 2.) Presumably, Appellant takes issue with the Bankruptcy Court's statement in its opinion that "Defendant admitted that the divorce proceedings were not commenced until after the transfer, July 13th, 2007, and that there is no documentation

of the transfer included in the subsequent divorce decree." (Bankruptcy Opinion at 15.) Although the Court agrees with Appellant that the Bankruptcy Court erred in its statement of the date of initiation of divorce proceedings, the Court notes that the divorce proceedings were still initiated well after the transfer at issue (and the date on which the deed was recorded). Accordingly, this evidence of an earlier date of divorce does not change the analysis. Thus, the Bankruptcy Court's reasoning remains intact, and any misstatement of the date of divorce proceedings was completely immaterial.[4] *See Calvary Constr. Inc. v. WDF, Inc. (In re Cavalry Const., Inc.)*, 428 B.R. 25, 42-44 (S.D.N.Y. 2010) ("In this case, Judge Hardin's 'error,' was, at most, a misstatement. . . . Accordingly, if there was any error at all, it was harmless and not grounds for reversal."); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 800-02 (2d Cir. 2009) (finding that one of the district court's findings of fact was clearly erroneous, but upholding the result because the error was "harmless"); *In re Adler, Coleman Clearing Corp.*, 204 B.R. at 106 ("An error is harmless if it is not 'inconsistent with substantial justice' or does not 'affect the substantial rights of the parties.'" (quoting *Citibank v. Arens (In re Arens)*, 139 B.R. 667, 669 (Bankr. N.D. Ohio 1991)) (internal quotation marks omitted)). As set forth above, even though divorce proceedings were initiated on May 15, 2007, the Court concludes that Appellant was an insider of the Debtor at the time of the transfer.

---

[4] The Court notes, under a *de novo* review, this Court would reach the same legal conclusion reached by the Bankruptcy Court even with the divorce action being filed on May 15, 2007.

2. Constructive Fraudulent Conveyance

Appellant appeals the Bankruptcy Court's determination that the transfer of 7 Howard Avenue was a constructive fraudulent conveyance. As set forth below, the Court concludes that the Bankruptcy Court correctly determined that the transfer was a constructive fraudulent conveyance under both federal and state law.

A conveyance by a debtor need not be made with actual intent to defraud in order to be avoidable under federal and New York State Law. Under the Bankruptcy Code,

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B). Similarly, the New York Debtor and Creditor Law states that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. Debt. & Cred. Law § 273. The determination of whether fair consideration is received in exchange for a transfer is a question of fact. *See Eclaire Advisor Ltd. as Trustee to Daewoo Int'l (Am.) Corp. Creditor*, 375 F. Supp. 2d 257, 269 n.5 (S.D.N.Y. 2005) (citing *Am. Tissue v. Donaldson*, 351 F. Supp. 2d 79, 105-06 (S.D.N.Y. 2004)).

As an initial matter, the transfer of 7 Howard Avenue occurred by a deed dated October 13, 2004, and thus was within both two years and six years of the date of the April 1, 2005 bankruptcy petition filed by Debtor, as required by federal and New York state law, respectively. As the Bankruptcy Court correctly noted, although under New York law, the burden is typically on the party challenging the transfer to demonstrate a lack of fair consideration, in the case of intra-family transfers, the burden of proof shifts to the transferee to demonstrate fair consideration. *See Nisselson v. Empyrean Investment Fund, L.P (In re MarketXT Holdings Corp.)*, 426 B.R. 467, 470 n.5 (Bankr. S.D.N.Y. 2010) ("Defendants have the burden of proof on this issue under the Bankruptcy Code, but New York State law generally places the burden on the plaintiff to demonstrate lack of 'fair consideration,' at least where the transferee is not a family member."). As discussed *supra*, Appellant was correctly determined to be an "insider" of Debtor, and this thus constituted an intra-family transfer. Thus, the burden was on Appellant to demonstrate that there was fair

consideration for Debtor's transfer of her interest in 7 Howard Avenue to him.[5]

## a. Reasonably Equivalent Value or Fair Consideration

The Bankruptcy Court rejected Appellant's argument that Debtor's ability to live at the property since 2004 without paying any utility bills, maintenance, or repair costs, was not fair consideration or reasonably equivalent value. This Court agrees. After a thorough examination of the record, the Court determines that the Bankruptcy Court correctly concluded that there was not fair consideration or reasonably equivalent value given by Debtor in exchange for the deeding of her tenancy by the entirety interest in 7 Howard Avenue to Appellant.

"[C]ourts have used the Code's 'reasonably equivalent value' interchangeably with the [Debtor and Creditor Law's] 'fair consideration' for purposes of analyzing constructive fraud claims under the Bankruptcy Code and the [Debtor and Creditor Law]." *Kramer v. Sooklall (In re Singh)*, Bankr. No. 06-44392-CEC, Adv. No. 08-1036-CEC, 2010 WL 2853749, at *6 (Bankr. E.D.N.Y. July 20, 2010).[6] In order to satisfy the statutory requirement for "reasonably equivalent value" under § 548 or "fair consideration" under New York's Debtor and Creditor Law, a conveyance must satisfy an antecedent debt or constitute a present exchange. *Pergament v. Reisner (In re Reisner)*, 357 B.R. 206, 214 (Bankr. E.D.N.Y. 2006) (citing 5 Collier on Bankruptcy, ¶ 548.05[1][b]); *see also HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1061 (2d Cir. 1995)). While dollar-for-dollar equivalence is not required, the value of the consideration may not be "'disproportionately small' as compared to the value of the transferred property." *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003).

Although transfers made pursuant to a valid separation agreement incorporated into a divorce decree are presumed to have been made for fair consideration, where the separation agreement is not incorporated into a divorce decree, the transfer is not presumed to have been made for fair consideration. Moreover, even if a valid separation agreement does contain the transfer, the Court may still scrutinize that separation agreement to ensure that it includes exchanges representing fair consideration. *See In re Gamaldi*, 2009 WL 961417, at *11; *see also Fed. Deposit Inc. v. Mallin*, 802 F.2d 12, 19-20 (2d Cir. 1986). The Bankruptcy Court correctly concluded that there was no evidence that the transfer of 7 Howard Avenue was incorporated into the separation agreement. Specifically, Appellant testified at trial:

> The Court: Now, the separation agreement doesn't describe at all how the marital assets are going to be divided. Is there an agreement that demonstrates how you divided these assets?
>
> The Witness: No. There's no agreement.

---

[5] In any event, even if the burden were on the Appellee, the result here would be the same.

[6] Unlike the Bankruptcy Code's "reasonably equivalent value" inquiry, fair consideration under the Debtor and Creditor Law also requires good faith on the part of the transferee. *See In re Singh*, 2010 WL 2853749, at *6. Because the Court concludes that Appellant has not demonstrated that the value requirement is met, this Court need not reach the good faith determination.

The Court: So there's no additional paper?

The Witness: No, there's not.

The Court: This is it?

The Witness: Yeah. There's no other paper.

The Court: This is the only thing that exists to support the proposition that the property was transferred pursuant to a marital agreement? There is no agree – there's no written agreement of that, is there?

The Witness: No, no. Nothing in writing.

(Tr. at 25-26; *see also* Tr. Ex. F, Separation Agreement; Tr. Ex. Q, Divorce Document.) "Where the transfer has not been incorporated into a divorce decree, more will be required about the financial circumstances of the parties, the value of the transferor's share in the property transferred, and the nature and amount of the potential claims waived by the transferee." *In re Gamaldi*, 2009 WL 961417, at *11 (citing *Darling v. Darling*, 869 N.Y.S.2d 307, 320 (Sup. Ct. 2008)). Thus, the Court proceeds to an examination of these factors.

Appellant conceded at trial that Debtor did not owe him any debt prior to the transfer. (Tr. at 37 ("There was no debt owed by your wife to you, there was [sic] no documents reflecting any debt owed by your wife to you. Is that correct? A: No. She owed me no money. Q: What did she owe you? A: Nothing.").) Instead, according to the deed, the transfer was made "in consideration of Ten Dollars." (Trial Ex. J, Deed dated 10-13-

04.) However, Appellant testified at trial that he never gave that $10.00 to Debtor. (*See* Tr. 17-18.) At trial, when asked whether he had given Debtor $10 for the transfer, Appellant merely reiterated the contention that Debtor's "payment" for the transfer was being allowed to stay in the house free from any obligations to pay utilities or the mortgage. (*See id.*; *see also* 341 Hearing Tr. 5 ("Trustee: Did you get any money from your husband when he took your name off the deed? Debtor: No.").)

In the instant appeal, Appellant claims that he introduced a letter of satisfaction of a mortgage for $123,750.00 clearing the name of Debtor as part of the agreements for Debtor to remain at the house, as long as she wanted, free from any obligation to pay for anything, including mortgage payments. Thus, Appellant argues that Debtor received fair consideration for the transfer of the home, because she was cleared of the mortgage, which was associated with the property, under which she was liable.

However, as the Bankruptcy Court noted, the evidence at trial indicated that, although this new mortgage might have relieved Debtor of liability under the prior mortgage, Appellant offered no evidence at trial—other than his own testimony—to demonstrate that he was paying the refinanced mortgage, and not Debtor.[7] Specifically, the Court noted:

---

[7] Nor did Appellant offer evidence that it was he who applied for and received the new mortgage. (*See* Tr. 60-62 (questioning Appellant, who had failed to present the application for the mortgage into evidence, "[s]o how do you remember if you included your wife or not [on the application]? The Witness: I know I did not include her").) Appellant did not present any documentary evidence regarding the new mortgage.

The Court: Mr. Durand . . . . There's no income. There's no evidence that you've earned a nickel. There's no tax returns. There's no money from your company. There's no money from anything, and so I'm wondering that since your wife was earning 2,000 – 25,000 in 2003, 26,000 in 2004, was that used to pay the obligations of the house?

The Witness: I don't know exactly what she used her money for, but . . . .

* * *

The Court: There's not a single document in the record . . . either in the form of a tax return, a K-1, a note on the back of an envelope, anything that showed you ever earned a penny . . . between the time of the separation and now.

* * *

The Witness: Yes. Correct. I have no written agreement. I mean no written document.

The Court: So the record — so my record is you have no income.

The Witness: No. I didn't say I don't . . . . Yes. I did earn my living.

The Court: Where's the record of it?

The Witness: I don't have any.

(Tr. 44-47; *see also* Tr. Ex. O, G. Durand's Compliance with Trustee's Document Requests ¶¶ 16-18 ("Defendant does not have

W2 or K1, 1999 through 2005 tax return. Defendant does not have copies of bank statement, front and back of checks from 1999 through April 1, 2005. Defendant does not have proof of any income received from 1999 to April 1, 2005.").) Although he claims that the mortgage was paid from his income, Appellant admitted at trial that he was earning "a lot less than" $20,000 a year between 2000 and onward. (Tr. 36.)

Moreover, the Bankruptcy Court correctly found that there was also evidence that Debtor had income during this period and paid at least some household expenses. (*See* Tr. 43-44.) Moreover, at the 341 Hearing, Debtor testified that she pays Appellant rent on the home. (341 Hearing Tr. 3 ("Trustee: What are the mortgages on the house? Debtor: He takes care of everything because he is very domineering. I just pay him for my rent.").) Accordingly, the evidence in the record—which was unrefuted other than by Appellant's own testimony (which the Bankruptcy Court did not credit)—indicated that Debtor did not receive the ability to live in the house at no expense after she transferred her interest in the property to G. Durand. The evidence also indicated that Debtor was, at least, contributing to the payments on the new mortgage. Moreover, the satisfaction of the initial mortgage was only accomplished by refinancing the property, which effectively wiped out Debtor's equity. (Bankruptcy Opinion at 8.) Thus, this Court concludes that the Bankruptcy Court's finding that Debtor did not receive fair consideration for the transfer of 7 Howard Avenue was not erroneous.

b. Insolvency

The Court next turns to the Bankruptcy Court's determination that at the time the

alleged fraudulent conveyance was made, the Debtor was or was thereafter rendered insolvent.[8] Insolvency is a question of fact, *Klein v. Tabatchnick*, 610 F.2d 1043, 1048 (2d Cir. 1979); *Join-In Int'l (U.S.A.) Ltd. v. N.Y. Wholesale Distribs. Corp. (In re Join-In Int'l (U.S.A.) Ltd.)*, 56 B.R. 555, 560 (Bankr. S.D.N.Y. 1986), "and the findings of the Bankruptcy Court in this regard will not be disturbed unless they are clearly erroneous." *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 35 (2d Cir. 1996).

The Bankruptcy Court's determination that Debtor was rendered insolvent by the transfer was not clearly erroneous. A presumption of insolvency arises where the debtor makes a conveyance without fair consideration. *See Sullivan v. Messer (In re Corcoran)*, 246 B.R. 152, 163 (E.D.N.Y. 2000); *United States v. Alfano*, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999). Once it is established that the transfer was in exchange for less than fair consideration, the transferee has the burden to overcome the presumption of insolvency by showing that the debtor was solvent after the transfer. *In re Corcoran*,

246 B.R. at 163.[9] Appellant has failed to do so here. Indeed, Debtor filed for bankruptcy on April 1, 2005, roughly six months after the transfer was made. As of the date of filing, Debtor had only $1,757 in assets in a checking account and over $37,000 in unsecured nonpriority claims. (*See* Petition.) Debtor acknowledged at the 341 Meeting that at the time of the transfer of her interest in 7 Howard Avenue, she was indebted to several creditors and being sued by some of them; those debts were not satisfied by the date on which Debtor filed her bankruptcy petition. (*See* 341 Hearing Tr. 7; *see also* Petition.) Moreover, Debtor testified at the 341 Hearing that Appellant caused Debtor to transfer her interest in 7 Howard Avenue to him specifically because of her debt. (*See* 341 Hearing Tr. 2-3.) Thus, this Court concludes that the Bankruptcy Court's finding that Debtor was rendered insolvent by the transfer was not clearly erroneous.

### 3. Actual Fraudulent Transfer

The Bankruptcy Court also determined that the Debtor's transfer of 7 Howard Avenue to Appellant should be avoided because it was a transfer made with the "intent to hinder, delay or defraud" creditors. *See* 11 U.S.C. §§ 548(a)(1), 544(b); N.Y. Debt. & Cred. Law § 276. Under 11 U.S.C. § 548(a)(1) and its state-law counterpart, New York Debtor and Creditor Law § 276, a conveyance made with *actual intent*, "as

---

[8] The Bankruptcy Court found that each of the three prongs of New York Debtor and Creditor Law § 273 were satisfied, specifically: (i) Debtor was rendered insolvent by the transfer; (ii) Debtor intended or believed that she would incur debts that she would be unable to pay as they matured; and (iii) at the time of the transfer, Debtor was either a defendant in actions for money damages in which final judgment had been rendered that have not been fully satisfied and/or judgments had been entered against her as of the date of the transfer. (Bankruptcy Opinion at 13.) The Court determines that there was sufficient evidence to conclude that Debtor was rendered insolvent by the transfer and, accordingly, need not reach the Bankruptcy Court's determinations as to the other prongs.

[9] "Insolvent" is defined under the Bankruptcy Code as a "financial condition such that the sum of [the] entity's debts is greater than all of [the] entity's property, at a fair valuation. . . . ." 11 U.S.C. § 101(32). The Court concludes that the Bankruptcy Court's finding of insolvency was not erroneous under New York Debtor and Creditor Law or the Bankruptcy Code.

distinguished from intent presumed in law, to hinder, delay or defraud present or future creditors, is fraudulent as to present and future creditors." *European Am. Bank v. Sackman Mortg. Corp. (In re Sackman Mortg. Corp.)*, 158 B.R. 926, 938 (Bankr. S.D.N.Y. 1993 (citing *In re Chadborne Indus., Ltd.*, 71 B.R. 86 (Bankr. S.D.N.Y. 1987)). Specifically, the Bankruptcy Code provides:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

11 U.S.C. § 548(a)(1)(A). Similarly, New York Debtor and Creditor Law provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276. It is only the debtor's intent that is relevant to the determination of actual intent to make a fraudulent conveyance. *See, e.g.*, *Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group)*, 396 B.R. 810, 826 (Bankr. S.D.N.Y. 2008).

"Since the question of actual fraud involves the parties' state of mind, it is not ordinarily proven by direct evidence, but rather, by inference from other facts proven." *McCarthy v. Nandalall (In re Nandalall)*, No.

06-12252, Adv. No. 08-90118, 2010 WL 1780048, at *5 (Bankr. N.D.N.Y. May 3, 2010) (citation omitted). "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the [party challenging the transfer] is allowed to rely on 'badges of fraud' to support his case, *i.e.*, circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (internal quotation marks and citations omitted). Circumstances recognized by the Second Circuit as "badges of fraud" include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*In re Nandalall*, 2010 WL 1780048, at *6 (citation omitted).

Here, several badges of fraud are present. As discussed extensively in the previous section, there was inadequate consideration given to Debtor for the transfer of her interest in 7 Howard Avenue. In addition, as discussed in the "insider" status analysis *supra*, Debtor and Appellant had a family,

friendship, or other close relationship. Moreover, Debtor retained benefit and use of the property in question, 7 Howard Avenue. Notably, Debtor listed 7 Howard Avenue as her address on her bankruptcy petition dated April 1, 2005 and stated that it was her address at the 341 Hearing. (*See* Petition; *see also* Tr. 13-14.) At trial, Appellant also testified that Debtor continued living in the house after she deeded him the property. (Tr. 13-18.) Furthermore, the general circumstances surrounding the transfer militate in favor of a finding of actual intent to defraud. At the time of the transfer, Debtor was indebted to several creditors and being sued by some of them; those debts were unsatisfied as of the date on which Debtor filed her bankruptcy petition. (*See* 341 Hearing Tr. 7; *see also* Petition.) Although Appellant testified that he was not aware that Debtor had extensive debt at the time of the transaction, this is contrary to the Debtor's testimony at the 341 Hearing that Appellant caused Debtor to transfer her tenancy by the entirety interest in 7 Howard Avenue to him because of all her debt (*see* 341 Hearing Tr. 2-3), and contrary to the Debtor's testimony at the 341 Hearing that Appellant knew she was in debt because he opened all the mail. (*Id.* at 5.)[10] To the extent that the Bankruptcy Court's findings were colored by its determinations regarding Appellant's (and Debtor's) credibility, the Court gives "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *See* Fed. R. Bankr. Proc. 8013.

Thus, the Bankruptcy Court's determination that several classic badges of fraud surrounded the transaction, which were sufficient to conclude that there was actual intent to hinder, delay, or defraud in the transfer of 7 Howard Avenue, was not erroneous. *See, e.g.*, *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1583 (2d Cir. 1983) (finding fraudulent intent to defraud when "[w]hile insolvent, [debtor] purchased two homes with his own money, but had title to both placed in the name of his wife who provided no consideration for these transfers. He continued to retain the possession, benefit and use of the properties and treated them as his own. He created dummy corporations in order to hide his assets. He concealed these assets in his petition for bankruptcy"); *Mendehlson v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 667 (Bankr. E.D.N.Y. 2008) ("The record shows several badges of fraud that support the conclusion that the GFI Transfer was made with an intent to hinder, delay, or defraud Victor Jacobs' creditors. These include the lack of consideration, the family relationship between Victor Jacobs and Eva Jacobowitz, and the associated prospect of a retention of control over the property, and the timing of the GFI Transfer, which coincides with Victor Jacobs' increased risk of liability on the Limited Guarantee. Accordingly, the Court finds that the GFI Transfer was made with actual intent to hinder, delay, or defraud Victor Jacobs' creditors."); *In re MarketXT Holdings Corp.*, 376 B.R. at 405-06, 426 (concluding that there was ample evidence "in the record of the 'badges of fraud' that constitute evidence of an intent to 'hinder, delay or defraud' creditors" when plaintiff in avoidance action demonstrated when the debtor was in "desperate financial condition," prior to the transfer, facts regarding the transfer were concealed from creditors, there was inadequacy of consideration, the parties to the transaction lacked an arm's-length relationship, and the transferor retained rights

---

[10] Nonetheless, as stated *supra*, it is the transferor's intent—not the transferee's intent—that is relevant for this inquiry.

and control over the transferred funds). Indeed, "[t]he transfer of property by the debtor to [her] spouse while insolvent, while retaining the use and enjoyment of the property, is a classic badge of fraud." *In re Kaiser*, 722 F.2d at 1583. Accordingly, the Court affirms the Bankruptcy Court's determination that the transfer of 7 Howard Avenue should be avoided as a transfer with actual fraudulent intent under the Bankruptcy Code and New York Debtor and Creditor Law.

## B. Sale of the Property

The Bankruptcy Court determined that the property should be sold free and clear of all liens under 11 U.S.C. § 363(h) and that the proceeds should be divided, according to their respective rights, among the bankruptcy estate and Appellant. Appellant claims that the Bankruptcy Court, by ordering that Appellant permit an appraiser to access his home in order to conduct an appraisal prior to the trial, "pre-judged the Appellant and set judgment against Appellant prior to the trial."

This Court concludes that the Bankruptcy Court's determination regarding the disposition of the property was correct. 11 U.S.C. § 363(h) of the Bankruptcy Code provides:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if--

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). The Trustee bears the burden of proving each of the four elements of § 363(h). Under subsection (h)(3), after the trustee has made his prima facie case establishing that the estate would benefit from the sale of the residence, the burden shifts to the defendant to show that the there is a detriment to him. *See, e.g.*, *Stern v. Molano (In re DeVanzo)*, Bankr. No. 8-08-75665-reg., Adv. No. 8-09-08128-reg, 2010 WL 1780038, at *4 (Bankr. E.D.N.Y. May 3, 2010); *O'Connell v. Prakope (In re Prakope)*, 317 B.R. 593, 602 (Bankr. E.D.N.Y. 2004).

The Trustee asserted that the sale of the property free and clear of Appellant's interest would have substantial economic benefit to the estate. *See, e.g.*, *Gazes v. Roswick (In re Roswick)*, 231 B.R. 843, 859 (S.D.N.Y. 1999) ("A 'co-owner's undivided one-half ownership interest chills any prospective purchase of the estate's interest [when such co-owner] currently resides on the property

and could prevent the sale of the property indefinitely." (citing *Bakst v. Griffin (In re Griffin)*, 123 B.R. 933, 935-36 (Bankr. S.D. Fla. 1991))). Appellant did not set forth any evidence that sale of Debtor's tenancy-by-the-entirety interest in 7 Howard Avenue would realize substantially less than a sale of the property as one single-family residence. Specifically, the Bankruptcy Court based its determination on the "only evidence in the record as to the property," an appraisal stating that it was valued at $361,500. (Tr. 56.) This resulted in the Debtor's interest in the property being valued at least $130,000. (*See* Trustee's Motion for Sanctions Direct Compliance with Discovery and Grant Other Further Relief Regarding Defendant, *Ackerman v. Durand, et al.*, Adv. Proc. No. 07-8115-736, ¶ 7, ECF No. 50.)

The Bankruptcy Court determined that the property was a single-family residence,[11] and there was no evidence in the record suggesting that partition of the property, in which Debtor and Appellant shared tenancy by the entireties, was feasible, practical, or desired. *See In re DeVanzo*, 2010 WL 1780038, at *3 ("The parties agree that a partition of the Real Property is impracticable because it is comprised of a single family dwelling, and the sale of the estate's interest, alone, would yield significantly less than a sale free and clear of the Defendant's interest."); *see also Sapir*, 230 B.R. at 654 ("Numerous cases decided in this Circuit and elsewhere since *Persky II* . . . have continued to apply Section 363(h) to authorize the sale of property owned as tenants by the entireties." (collecting cases)).

Appellant did not present substantial evidence regarding why the sale should not proceed, nor did he present evidence that the sale would be detrimental to him. Appellant's only testimony at trial regarding detriment to him concerned his connections to Freeport—not to 7 Howard Avenue. Appellant testified that his main church is in Freeport, that he was part of the community in Freeport, and considered Freeport his "hometown." (Tr. 52-53.) Appellant testified that he has a brother who lives on Long Island, although he did not know exactly where he lived. (Tr. 51.) Appellant also testified that he has family in Queens and Brooklyn. (Tr. 51-52.) Appellant did not demonstrate or even state that he would not be able to find adequate substitute housing in the area or that moving would cause him a significant inconvenience. *See In re DeVanzo*, 2010 WL 1780038, at *9 ("Here, the Defendant has not alleged any economic harm, nor has she alleged that there are no alternative rentals in the neighborhood. This Court is 'not blind to the fact that in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head.' *In re Persky*, 893 F.2d at 21 (citing *United States v. Rodgers*, 461 U.S. 677, 703-04 (1983)). However, based on the facts presented, the Defendant has not shown that she will be unable to find adequate substitute housing in the area."). Appellant did not demonstrate that any circumstance warranted the Bankruptcy Court concluding that the sale should not proceed. *See In re Roswick*, 231 B.R. at 861 ("[T]he nondebtor must demonstrate some extraordinary circumstance, other than inconvenience or emotional attachment, to frustrate the trustee's attempt to sell property."). Most importantly, on this appeal, Appellant does not challenge the Bankruptcy Court's determination that the house must be sold. In any event, even if he

---

[11] Appellant did not contest this determination in the Bankruptcy Court or on this appeal.

did challenge it, the Court agrees with the Bankruptcy Court's determination. Accordingly, the Bankruptcy Court's ruling regarding sale of the property is affirmed.

To the extent that Appellant raises claims regarding the Bankruptcy Court's order to Appellant to permit real estate expert Richard Klimkowski to access 7 Howard Avenue on May 19, 2009, these claims are without merit. The information that the real estate expert was to provide the Court with was important and necessary to the Bankruptcy Court's determination regarding the disposition of the property.

The Bankruptcy Court has the authority to order a party to permit entry onto property to inspect the property if it is relevant to the proceeding. Federal Rule of Civil Procedure 34, which applies in bankruptcy proceedings, provides:

> (a) A party may serve on any other party a request within the scope of Rule 26(b):
>
> (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a)(2). On March 4, 2009, the Trustee sent Appellant a letter requesting his consent for Appelle's appraiser to gain access to 7 Howard Avenue to conduct an appraisal. (Appellee's Ex. CC.) After Appellant failed to respond to this request, Appellee moved for an order from the Bankruptcy Court directing Appellant to allow Appellee's appraiser, Richard Klimkowski, to access the property. (*See* Trustee's Motion for Sanctions Direct Compliance with Discovery and Grant Other Further Relief Regarding Defendant, *Ackerman v. Durand*, Adv. Proc. No. 07-8115-736, ¶ 30, ECF No. 50.) On May 6, 2009, the Bankruptcy Court orally granted the Trustee's motion. (*See Ackerman v. Durand*, Adv. Proc. No. 07-8115-736, ECF Docket Sheet, Oral Ruling dated May 6, 2009 ("TWO DATES TO BE GIVEN TO DEFENDANT BY TODAY (5/6/09) TO GET AN APPRAISAL BEFORE THE TRIAL").) Appellant did not appeal this ruling, nor request a motion for reconsideration of the ruling. (*See Ackerman v. Durand*, Adv. Proc. No. 07-8115-736, ECF Docket Sheet.)

The Court notes that although Appellant contends that the Bankruptcy Court's order than an appraisal should occur prior to trial demonstrates that the Bankruptcy Court "pre-judged" Appellant, the purpose behind the appraisal occurring prior to trial was so that G. Durand would have an opportunity to challenge the value of the property at trial, if he chose to do so. *See, e.g.*, *New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*, 760 F.2d 1334, 1345 (2d. Cir. 1985) ("Preliminarily, the district court was entitled to view any objections by the debtor to the Holt appraisal in light of the fact that the debtor had informed the court that it would arrange for an independent appraisal to be done, but then without further explanation, failed to provide such an appraisal. Thus, even assuming, *arguendo*, that the Holt appraisal contained some deficiencies, as the matter was submitted to the trial court the appraisal was not controverted by any other expert witness nor were its underlying facts in substantial dispute. Moreover, the district court was entitled to view the debtor's failure to produce such an appraisal, after explicitly

promising to do so, as evidentiary support for the Holt appraisal, and to regard the debtor's after-the-fact objections as suspect."); *In re Brown*, No. 09-22585, 2010 WL 1849407, at *1 (Bankr. W.D.N.Y. May 5, 2010) ("At the Trial . . . a New York State licensed real estate appraiser, testified on behalf of the Debtor as to his opinion of the fair market value of the Residence, which testimony was supported by a March 17, 2010 written appraisal that valued the Residence at $65,000.00. Also at Trial, Stephen L. Squirrell, a New York State licensed real estate appraiser, testified on behalf of ESL as to his opinion of the fair market value of the Residence, which testimony was supported by February 13, 2010 written appraisal that valued the Residence at $110,000.00, with a quick sale value of $95,000.00.").

In any event, the appraiser was unable to conduct the inspection prior to May 14, 2009. Accordingly, although Appellant objects to the performance of this appraisal as indication that the Bankruptcy Court "pre-judged" Appellant, the Court notes that the appraisal was not used at trial. In sum, for the reasons discussed above, the Bankruptcy Court's order of May 6, 2009, directing G. Durand to permit an appraiser to access his home at 7 Howard Avenue, was not inappropriate and did not evidence that the Bankruptcy Court had "pre-judged" Appellant. Thus, Appellant's claim is without merit.

### C. Appellant's Claims Regarding the Bankruptcy Court's Procedures

Appellant argues that there were several procedural defects with his trial in Bankruptcy Court. Specifically, Appellant claims that: (1) the Bankruptcy Court exhibited biased and prosecutorial behavior during the May 14, 2009 trial; (2) the Bankruptcy Court "denied

Appellant the presumption of innocence" at trial; and (3) Appellant was not given an opportunity to prove his case at trial.

It is the Trustee's duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). In accordance with this duty, the Trustee initiated the instant action against Appellant in order to recover Debtor's tenancy-by-the-entireties interest in 7 Howard Avenue. The Trustee asserted that such property was property of the estate under 11 U.S.C. § 541, which could be used to pay creditors.

Although Appellant contends that he was not given an opportunity to prove his case at trial, the record reflects to the contrary. The docket of the case before the Bankruptcy Court indicates that Appellant was given multiple opportunities to produce documents, witnesses, or any other evidence in support of his case:

> The Court: Okay. Mr. Durand, you have no witnesses here?
>
> Mr. Durand: No, I don't.
>
> The Court: Let me explain. You have a right, though I'm not quite sure, it's an oddity. You've produced no documents, so there are no documents to put in the record to refute any allegations the trustee has made. There are no witnesses to refute any of the allegations the trustee has made. So what is it that you intend to do now to put on your case? It's your – you have a certain burden now moving forward.

17

You understand or you're deemed to understand the obligations in the complaint. You've answered those allegations with denials. I've reserved on a summary judgment question. The trustee has put on a prima facie case, which means he has put on a case that's, without being refuted, may be sufficient to meet his claims that, one, the property subsequent to the filing of the bankruptcy an interest in property was transferred for what appears to be no consideration at a time when the debtor was insolvent. It was post-petition.

There is a record now that reflects nothing as far as whether the debtor was indebted to you in any fashion. The only response the Court has seen to the allegation is that the consideration that you're arguing the debtor gave in return for the transfer of the interest in the house was you permitted her, even though she was still your wife and your children, to live in the house.

Is that your case? Is that your argument?

* * *

Mr. Durand, this is your opportunity. The trustee has rested.

Mr. Durand: Yes.

The Court: This is now your opportunity. The purpose of what you're doing now is not making a closing statement nor an opening statement actually. What you're doing or what I'm seeking you to do is since

you've produced no evidence, no documents, nothing that supports your position at this point, and the record is barren of that, what evidence are you prepared to put into this Court to refute the allegations that the trustee has made in his complaint? Just evidence.

Mr. Durand: The Court and the trustee has a letter of satisfaction of $123,000 that was paid on behalf of the debtor. That is a document on the record, and the debtor had stayed in the house without paying for anything, and that was the agreement.

The Court: Where is -- Mr. Durand, where is there evidence in the form of records or testimony from a witness that what you're saying is accurate, that the debtor remained in the house for no consideration? Where on the record is that supported?

Mr. Durand: I have no written document.

The Court: So you have no method of proving that?

Mr. Durand: No written document, but as I said before, she remained in the house without any obligation to pay for anything at the time the house was –

The Court: What supports that assertion, sir? I'm only dealing now -- I'm not arguing that you're saying it. I'm not arguing whether you believe it or not. That's not my point. We're attempting to establish at trial, which is what we're at now, a record. That

record contains evidence. You've produced no documents.

Mr. Durand: I produced $123,000 letter of satisfaction which will speak on her behalf.

The Court: Okay.

Mr. Durand: She has no obligation as far as the mortgage is concerned. That was part of the agreement.

The Court: No. I'm asking specifically where is the evidence that supports your proposition that in exchange for her interest in the house she was given free use of the house? Where's the evidence of that?

Mr. Durand: I don't have any written document.

\* \* \*

Mr. Durand: Okay. There did come to the point she didn't want to pay for anything, and she did not participate in the payment of anything, and --

The Court: But we have no evidence of that.

Mr. Durand: Right.

(Tr. 69-73.)

Moreover, according to the Trustee's submissions before the Bankruptcy Court, the Trustee "served Durand with [the Trustee's] First Request for Production of Documents, which required Durand to produce the requested documents by January 13, 2009." (*See* Trustee's Motion for Sanctions Direct Compliance with Discovery and Grant Other Further Relief Regarding Defendant, *Ackerman v. Durand, et al.*, Adv. Proc. No. 07-8115-736, ¶ 22, ECF No. 50.) Appellant responded by producing a "few documents," "all of which were already in [the Trustee's] possession, except for the Letter of Mortgage Satisfaction dated February 2, 2005." (*Id.* ¶ 24; *see also id.* ¶ 28 (stating that the Trustee "has been unable, notwithstanding all efforts, to get Durand to comply with discovery"); Trustee's Trial Ex. N, Defendant's Compliance with Document Requests.) Moreover, as indicated in the trial transcript, Appellant was given a full and fair opportunity to be heard at each hearing before the Bankruptcy Court and at trial. Appellant was informed in advance regarding and was present at each hearing held before the Bankruptcy Court and at trial. Appellant was given several opportunities to present evidence prior to and during the trial, but he did not take advantage of these opportunities.[12]

To the extent that Appellant raises issues with the Bankruptcy Court's questioning of Appellant, this claim is also without merit. Federal Rule of Evidence 614 provides that "[t]he court may interrogate witnesses, whether called by itself or by a party." Fed. R. Evid. 614. Bankruptcy courts regularly engage in questioning of witnesses. *See, e.g.*, *Official Cmte. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 722 (Bankr. E.D. Cal. 1992). Indeed, "the questioning of witnesses by the court is a practice permitted in both jury and nonjury

---

[12] Appellant was also informed by the Bankruptcy Court on multiple occasions that he should consider retaining counsel, but Appellant chose not to retain counsel to represent him in the adversary proceeding. (*See* Tr. 88-89.)

trials under Rule 614 of the Federal Rules of Evidence and prior to the enactment of the Federal Rules." *United States v. IBM Corp.*, 475 F. Supp. 1372, 1382 (S.D.N.Y. 1979).

Under the circumstances of this case, where Appellant was given notice of all hearings before the Bankruptcy Court, attended all hearings before the Bankruptcy Court, was afforded an opportunity to present evidence during discovery, produced very few documents during discovery, and chose not to put on evidence at trial, along with the complete absence of any improper behavior by the Appellee or the Bankruptcy Court, the Court concludes that Appellant has failed to demonstrate any bias, misconduct, or abuse of discretion by the Bankruptcy Court. *See, e.g.*, *Martin v. O'Connor*, 181 F.3d 83, 83 (2d Cir. 1999) ("Plaintiff has failed to show any bias, misconduct, or abuse of discretion on the part of either the bankruptcy court or the district court, or any violations of procedural rules on the part of Appellee that would impact on the disposition of this appeal."); *Croton River Club, Inc. v. Half Moon Bay Homeowners Assoc., Inc. (In re Croton River Club, Inc.)*, 52 F.3d 41, 45 n.2 (2d Cir. 1995) ("Appellants suggest that the bankruptcy court exhibited bias and excluded crucial evidence regarding previous calculations. However, as the district court noted, the so-called bias was merely an open expression of entirely justified skepticism. Moreover, the exclusion of the evidence in question was hardly reversible error. The bankruptcy court, as a trial court, has broad discretion regarding the admissibility of evidence and will be reversed only for abuse of that discretion. Given that the bankruptcy court based its ruling on direct evidence concerning which facilities benefitted particular users of the complex, and how much they used them, we see no abuse of discretion."). As discussed above, the Bankruptcy Court's rulings were fully supported by the evidence before it at trial.[13] This Court has searched the full record and finds absolutely no evidence of bias or prejudgment on the part of the Bankruptcy Court. Accordingly, the Court concludes that Appellant received a fair trial and proceeding in the Bankruptcy Court. Appellant's claims relating to the fairness of the bankruptcy proceeding are dismissed. *See Damian Servs. Corp. v. Freedom Pers., Inc.*, 188 B.R. 107, 109 (N.D.N.Y. 1995) ("A review of the pretrial and trial transcripts, however, reveals no evidence of unfair or partial conduct on the part of Judge Waldron. As appellant willingly concedes, Judge Waldron indicated at the pretrial hearing that he would 'hear all the persuasive arguments,' and he was 'clearly not making a determination today.'"); *In re D. H. Overmyer Co., Inc.*, 383 F. Supp. 21, 23 n.3 (S.D.N.Y. 1974) ("The final argument urged by Overmyer is that the Bankruptcy Judge prejudged the rights of the landlords before the trials. After reading the transcripts of all the cases on appeal, it is apparent that this argument by Overmyer has absolutely no merit.").

---

[13]To the extent that Appellant argues that he was "denied the presumption of innocence," the Court notes, as discussed *supra*, that the Bankruptcy Court correctly placed the initial burden on the Trustee to present a prima facie case of constructive and/or actual fraudulent conveyance. Only once the Trustee had met the burden did the Bankruptcy Court shift the burden to Appellant to come forward with evidence supporting his position. Accordingly, this Court concludes that the Bankruptcy Court appropriately placed the burden on the Trustee, and did not deny Appellant his constitutional rights at trial.

## IV. CONCLUSION

For the foregoing reasons, after careful consideration of the record, the Court affirms the Bankruptcy Court's judgment against G. Durand in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 27, 2010
Central Islip, New York

* * *

The Appellant is proceeding *pro se*. The attorneys for the Appellee-Trustee are Neil H. Ackerman, Esq., and Kamini Fox, Esq., of Meltzer, Lippe, Goldstein & Breitstone, LLP, 190 Willis Avenue, Mineola, New York 11501.